IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA



CLAYTON LILLY,
    PLAINTIFF,

vs.   CASE # 5:04-1032

WARDEN TROY WILLIAMSON,
CAPTAIN HUTCHINSON,
LIEUTENANT MURPHY,
LIEUTENANT KELLERMAN,
MEDICAL DIRECTOR McCLAIN,
S.I.S. DIRECTOR LOUIS,
CASE MANAGER LESLIE,
    DEFENDANTS.

## PREMLIMINARY STATEMENT

This is a complaint for injuntive relief and damages brought under 42 U.S.C. § 1331 and 1346 in connection with the unprovoked attack on plaintiff CLAYTON LILLY, a prisoner at Federal Correctional Institution-Beckley, by defendant Lt. Murphy, a federal corrections officer. The attack on plaintiff was a violation of his constitutional rights under the Eight Amendment; prohibition against cruel and unusual punishment and the due process clause of the Fourteenth Amendment.

## JURISDICTION VENUE

The court has authority to act in this case under **Article III, Section 2** of the U.S. Constitution and **28 U.S.C. § 1331 and 1346.**

## PARTIES

1. Plaintiff **CLAYTON LILLY** is a federal prisoner at Federal Correctional Institution-Beckley in Beaver, West Virginia.

2. Defendant Warden **Troy Williamson** was the warden at FCI-Beckley at the time of attack.

3. Defendant, **Captain Hutchinson** is a federal correctional officer at FCI-Beckley.

4. Defendant, **Lt. Murphy** was a federal correctional officer at FCI-Beckley and is the perpetuator of the attack on plaintiff Lilly.

5. Defendant, **Lt. Kellerman** is a federal correctional officer at FCI-Beckley.

6. Defendant, **S.I.S. Director Louis** is a federal correctional officer at FCI-Beckley with the rank of S.I.S. officer.

7. Defendant, **Medical Director McClain** is the medical director at FCI-Beckley and watched as the attack on plaintiff took place and would not examine plaintiff for bruises.

8. Defendant, **Case Manager Leslie** is also an employee of FCI-Beckley as a case manager.

## STATEMENT OF FACTS

1). On the morning of May 15, 2003, at approximately 10:00 a.m., while attempting to receive medical attention in the Special Housing Unit (SHU), plaintiff fell to the floor and was unable to get up. Lt. Murphy came in and ordered the other inmates in the cell to come out.

2). Lt. Murphy then came into the cell as plaintiff was lying on the floor and proceeded to step on plaintiff's back very hard, causing plaintiff's head to hit the bottom of the steel bunk.

3). Lt. Murphy then had Officer Gibson help lift plaintiff to his feet but plaintiff was unable to walk and fell to his knees. Lt. Murphy then ordered Officer Stanley to grab plaintiff by his feet and they proceeded to carry the plaintiff as if he were a piece of livestock.

4). Lt. Murphy then dropped plaintiff on the floor of the medical area on his stomach.

5). Medical Director McClain told plaintiff if he wished to be examined, he would have have to get up to the table. Plaintiff informed Dr. McClain that he was unable to do so.

6). Dr. McClain, with the help of Officer Gibson, finally was able to get plaintiff on the table where Dr. McClain began to examine plaintiff's head, but he refused to examine plaintiff for bruises caused by Lt. Murphy due to the fact that he was a witness to said incident.

7). After examination, Lt. Murphy then ordered Officer Gibson to place plaintiff outside in the rain where plaintiff was left without staff supervision for approximately one (1) hour before being placed in another cell.

8). At the time of this attack on plaintiff, plaintiff tried to have numerous medical staff examine his bruises to no avail, on the dates of May 15, 16, 17, and 18, 2003. On May 16, 2003, plaintiff showed his bruises to S.I.S. Officer Louis who tried to get someone to document plaintiff's bruises but could not. Captain Hutchinson also witnessed the bruises on plaintiff's arm but would not make any documentation of the bruises, or take any pictures of the bruises. The Captain then threatened plaintiff in an indirect way by saying to plaintiff, "if you want to leave special housing, you know what you have to do."

9). Plaintiff also showed his bruises to Warden Troy Williamson and there was still no pictures or any documentation initiated.

10). Plaintiff was left in special housing until his bruises were starting to disappear, but it still took plaintiff filing a BP-8 on Captain Hutchinson, that was never answered, before plaintiff was released from special housing.

11). Plaintiff was not only a victim of an attack by Lt. Murphy but was also victimized by an administrative cover-up when he attempted to file his administrative remedy. While in special housing, plaintiff filed a BP-8 and also a BP-9.

Plaintiff's BP-8 was returned with an answer, but when plaintiff attached it to a BP-9 to the warden, it was never returned so that plaintiff could file it with a BP-10 and a BP-11 therefore thwarting any attempt by plaintiff to enlist the help of the regional office and central office to take action against the above listed defendants.

12). The administration never informed plaintiff of its investigative findings on this incident, but Warden Williamson responded in writing that plaintiff would be granted part of his request.

13). Lt. Murphy was given a transfer to another institution approximately seven (7) months after this incident.

## CLAIMS FOR RELIEF

1). The unprovoked attack on plaintiff while lying on the floor.

2). The unusual way of carrying plaintiff as though he was livestock.

3). The way plaintiff was just dropped on the medical area floor and not placed on a table.

4). The unprovoked action of placing plaintiff outside in the rain for one (1) hour after imcomplete examination by medical staff.

5). Medical staff was deliberately indifferent to plaintiff's serious medical needs in refusing to examine plaintiff.

6). The failure of Captain Hutchinson to take pictures or make any documentation of plaintiff's bruises.

7). The failure of Warden Troy Williamson to have pictures or documentation of plaintiff's bruises; also the failure to move plaintiff to another institution so that he would not face uniformed treatment.

8). Because plaintiff's due process rights to the Fourteenth Amendment of the Constitution were violated when plaintiff's administrative remedy was blocked by Warden Troy Williamson for failure to return a copy of plaintiff's BP-9.

9). Because of Warden Troy Williamson's failure to move plaintiff to another institution, plaintiff has suffered from uniformed treatment.

10). Lieutenant Kellerman was the officer in charge on May 16, 2003 when S.I.S. Officer Louis tried to get someone to document plaintiff's bruises.

11). Because of this, plaintiff has been plagued by recurring nightmares of the attack on his person.

12). Plaintiff has dealt with emotional stress since his attack, and had to take a stress management class as well as a yoga class in an attempt to combat depression.

13). Because plaintiff has suffered emotional stress while attempting to file his adminstrative remedy. Case Manager Leslie was indifferent to making a copy of plaintiff's BP-11 and filed a incident report on plaintiff that was untrue.

14). Plaintiff was the victim of more uniform treatment on March 2, 2004 when staff employee B. Stevenson accused plaintiff of threatening him and was found not to be true. Lt. Kellerman was a part of this action as well as Captain Hutchinson, Case Manager Peters, Counselor Hasbrouch and Unit Manager Ronat. Plaintiff was put in special-housing and ordered to see the D.H.O., where 13 days of good time were taken from plaintiff and 30 days of D.S. time before this action was taken. Plaintiff's incident report was changed three (3) times but plaintiff was never given a copy until two (2) days before his D.H.O. hearing.

15). Plaintiff tried to get therapy from the Director of psychology, Dr. Ellis, but he was indifferent right away to plaintiff's mental and emotional needs which made plaintiff call off his second appointment with him on May 12, 2004 at 7:30 a.m..

16). Plaintiff should receive relief because Warden Troy Williamson responded to plaintiff's BP-9 remedy stating that part of plaintiff's request was being granted, but no part of plaintiff' request was granted at all. In fact, there had to be evidence of Lt. Murphy's assault on plaintiff for the Warden to even grant part relief that was never done, as well as not returning copies of plaintiff's BP-8 and BP-9. This was nothing more than a cover-up so that plaintiff could not use his administrative remedy effectively.

### RELIEF REQUESTED

A). Issue a declaratory judgement stating that:

1). The physical abuse of the plaintiff by Lt. Murphy violated the plaintiff's rights under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution and constituted an assault and battery under state law.

2). Captain Hutchinson's failure to take pictures and documentation of plaintiff's bruises violated plaintiff's rights to due process under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

3). Warden Troy Williamson's failure to take pictures and documentation of plaintiff's bruises as well as not returning a copy of plaintiff's BP-9 violated plaintiff's right to due process under the Fifth, Eighth and Fourteenth Amendments.

4). Defendant McClain's actions in failing to provide adequate medical care for the plaintiff violated and continue to violate the plaintiff's rights under the Fifth, Eighth and Fourteenth Amendments.

5). Warden Troy Williamson's failure to move plaintiff to another institution so plaintiff would not be subjected to uniformed treatment placed plaintiff in danger therefore violating his Fifth, Eighth and Fourteenth Amendment rights.

6). Warden Troy Williamson's failure to discipline Lt. Murphy for his misconduct was a failure to carry out his **duties as a warden.**

7). Captain Hutchinson's failure to discipline Lt. Murphy was a dereliction of his duties as a superior officer.

8). Captain Hutchinson's failure to release plaintiff from special-housing until his bruises were gone and plaintiff filed on him, was a cover-up of the truth and actions unbecoming an officer.

9). Because plaintiff was treated unfairly by Case Manager Leslie who lied on plaintiff to get him into trouble because he was trying to get her to make a copy of his BP-11. She should have been found guilty of uniformed treatment and unprofessional conduct therefore violating plaintiff's due process rights under the Fifth, Eighth and Fourteenth Amendments.

10). Because plaintiff has suffered much pain when Lt. Murphy assaulted him on May 15, 2003. Murphy should be charged with assault and battery, therefore violating plaintiff's Fifth, Eighth and Fourteenth Amendment rights.

11). Because plaintiff is depressed from being treated unfair by staff since this incident.

12). Plaintiff has had recurring nightmares.

13). Because plaintiff has try to get psycho-therapy for the emotional problems he's been dealing with, but Dr. Ellis seems not to care about nothing but the institution and not plaintiff's needs.

14). Because Lt. Kellerman also subjected plaintiff to uniformed treatment by lying on plaintiff in her report of plaintiff on March 2, 2003 as well as her not coming to special-housing when S.I.S. Officer Louis tried to get someone to document plaintiff's bruises. Should be found guilty of conduct unbecoming an officer.

Plaintiff prays that this honorable court issue an injunction ordering Warden Martin Anderson:

1). To immediately remove Plaintiff to another institution.

2). That all incident reports filed after this incident be found as unfair treatment and be removed from plaintiff's record.

3). That Plaintiff be given treatment by an experienced psychotheripist to deal with recurring nightmare.

Plaintiff also prays for an injunction awarding compensatory damages in the following amounts:

1). Lieutenant Murphy: $300,000.00

2). Captain Hutchinson: $300,000.00

3). Warden Troy Williamson: $300,000.00

4). Medical Director McClain: $100,000.00

5). Lieutenant Kellerman: $50,000.00

6). Officer Louis: $25,000.00

7). Case Manager Leslie: $25,000.00

8). Grant such other relief as it may appear the plaintiff is entitled.

Plaintiff has attached for this court:

1). A copy of the warden's response to his BP-9

2). A copy of BP-10 to the regional office.

3). A copy of BP-11 to the central office.

4). Financial statements for the last six months.

U.S. Department of Justice

Federal Bureau of Prisons

Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | Lilly, Clayton | 07158-068 | Oak A Upper | FCI-Beckley |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

Part A—REASON FOR APPEAL    My name is Clayton Lilly, and here I wish to present to you my complaint. On May 14, 2003, I was placed in the SHU (Special Housing Unit) after receiving treatment for a head injury. While in the SHU, the room began spinning, and I became very dizzy. I asked the officers on duty if the medical staff had sent over my medication, but I was told that it hadn't arrived, so I lay down in my bed hoping that I would begin to feel better, but instead I began to feel worse. On May 15, 2003, it got to be really bad and I could no longer stand the pain. I began pressing the call button for help, but received no response.  In the process of waiting, the pain became so bad that I fell to the floor in agony. My fellow inmates began beating on the door and calling for officers to come and check on me. Finally a officer came, and seeing me on the floor, he went to get a nurse. Upon returning with the nurse, she told the officers to help me to medical. She checked me out and said she could find nothing wrong. I told her there was something wrong as my head kept spinning. She sent me back to my cell. Upon returning, I asked the officers to place my mattress on the floor as I wanted to lay down there. Before I could lay down, Officer Murphy came in and pulled my mattress out. I lay on the floor for about an hour before the nurse returned to check on me. She asked me to rise up but I could not. She left and returned with the doctor. He too asked me to rise, and I still was unable to do so. At this point, Officer Murphy asked my cellmate to exit the cell. When he was out, Officer Murphy came into the cell and stepped onto my back very hard, causing me to hit my head on the bottom of the bunk. He then pulled my arms behind me, while digging into my left arm causing a bad bruise.

8-17-03, See attached page.                    Clayton Lilly

DATE                                            SIGNATURE OF REQUESTER

Part B—RESPONSE

DATE                                                                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE          CASE NUMBER: _____

Part C—RECEIPT

CASE NUMBER: _____

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL            REG. NO.            UNIT            INSTITUTION

SUBJECT: _____

_____          _____          BP-230(13)
USP LVN    DATE    Previous editions not usable    SIGNATURE, RECIPIENT OF REGIONAL APPEAL    APRIL 1982

As we were returning to the medical area, I stumbled and fell to the floor. Before I could get back to my feet, Officer Murphy had another officer grab my feet, and they carried me as though I was a piece of livestock, and put me on the floor in medical. The doctor and another officer had to help me from the floor onto the table.

The doctor checked me over once again, and once again could not find anything wrong despite the fact I informed him that the room was continually spinning. He told Officer Murphy that he could return me to my cell, but he (Officer Murphy) told another officer to place me outside in the rain. They left me to lay on the wet ground for an hour or more before another officer told them to bring me in and put me in my cell.

As a result of this cruel and unusual punishment, I showed my bruises to the Warden, the Captain, a number of other officers as well as an S.I.S. officer, as well as taking out and filing a complaint against Officer Murphy. Because I filed this complaint, I was left in the SHU even after I was cleared of the incident I was accused of.

Sir, proper procedure was not followed during this incident. No one took pictures of my bruises, no one took down any information about my concerns, in fact no one wanted to even acknowledge that it happened, and as of yet I still have not received a response to my written complaint.

I feel my treatment at the hands of Officer Murphy, and the subsequent treatment of my complaint is inhumane, unlawful, as well as unconstitutional. This officer assaulted me for no reason and I was made to suffer as a result of his misconduct.

I am sending you a copy of my Administrative Remedy receipt in hopes that you will address the misconduct of the officers of this institution. The remedy I.D. no. is 300122-F1. I ask that this officer receive some type of disciplinary action against him, and I also request that I be moved to another facility in order to avoid future problems such as retaliation, harrassment tactics, and other forms of "getback" from the officers.

I thank you for your time in listening to me and I look forward to hearing from you in the very near future.

Sincerely and Respectfully,

Clayton Lilly   7-4-03
Reg. No. 07188-068
Federal Correctional
Institute-Beckley
P.O. Box 350
Beaver, WV 25813

REQUEST FOR ADMINISTRATIVE REMEDY                          BEC-300122-F1
INMATE:    LILLY, Clayton
Reg. No.   07188-068


Your Request for Administrative Remedy dated May 26, 2003, received May 27, 2003, alleging staff misconduct has been reviewed. Specifically, you allege while housed in the Special Housing Unit, staff used unnecessary force when removing you from the cell, and while escorting you to Health Services, staff grabbed your feet to carry you. Additionally, you claim you were put outside in the rain for an hour. You request to be moved and the staff member receive disciplinary action.

A review of your case reveals on April 8, 2003, you were placed in the Special Housing Unit (SHU) under Special Investigative Supervisor review. You will remain in SHU until completion of the review.

Your allegations of staff misconduct are under investigation. Should any further action be necessary, such action will be taken; however, staff personnel matters are not subject to inmate review.

To the extent an investigation is being undertaken, your Request for Administrative Remedy is partially granted. If dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, Mid-Atlantic Region, 10010 Junction Drive, Suite 100-North, Annapolis Junction, Maryland 20701, within twenty (20) calendar days of the date of this response.


6-4-03                                          Troy Williamson, Warden
Date


I did Not Receive till 8-15-03 From Counselor Midgley, I was Not still given A copy of my 9BP

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 23, 2003

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      BOP CENTRAL OFFICE

TO  : CLAYTON LILLY, 07188-068
      BECKLEY FCI     UNT: OAK      QTR: O03-328L
      PO BOX 1280
      BEAVER,  WV 25813


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 300122-A1       CENTRAL OFFICE APPEAL
DATE RECEIVED   : SEPTEMBER 10, 2003
SUBJECT 1       : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT SUBMIT PROPER NUMBER OF CONTINUATION PAGES
                 WITH YOUR REQUEST/APPEAL.  2 - WARDEN'S LEVEL; 3 -
                 REGIONAL LEVEL; AND 4 - CENTRAL OFFICE LEVEL.  THE
                 NUMBER CITED INCLUDES YOUR ORIGINAL.

REJECT REASON 2: YOU DID NOT PROVIDE A COPY OF YOUR   INSTITUTION
                 ADMINISTRATIVE REMEDY REQUEST (BP-9) FORM OR  A COPY
                 OF THE (BP-09) RESPONSE FROM THE WARDEN.

REMARKS         : CONCUR WITH REGION'S RATIONALE FOR REJECTING YOUR
                  APPEAL. IT IS YOUR RESPONSIBILITY TO MAINTAIN
                  COPIES FOR YOUR FILES.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: AUGUST 11, 2003

FROM: ADMINISTRATIVE REMEDY COORDINATOR
MID-ATLANTIC REGIONAL OFFICE

TO : CLAYTON LILLY, 07188-068
BECKLEY FCI   UNT: OAK   QTR: C03-329U
PO BOX 1280
BEAVER, WV 25813

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 300122-R1       REGIONAL APPEAL
DATE RECEIVED  : AUGUST 8, 2003
SUBJECT 1      : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR INSTITUTION
                 ADMINISTRATIVE REMEDY REQUEST (BP-9) FORM OR A COPY
                 OF THE (BP-09) RESPONSE FROM THE WARDEN.

REJECT REASON 2: YOU MAY ONLY SUBMIT ONE CONTINUATION PAGE, EQUIV. OF ONE
                 LETTER-SIZE (8.5 X 11) PAPER. TEXT ON ONE SIDE. THE
                 TEXT MUST BE LEGIBLE.

REJECT REASON 3: YOU DID NOT SUBMIT PROPER NUMBER OF CONTINUATION PAGES
                 WITH YOUR REQUEST/APPEAL. 2 - WARDEN'S LEVEL; 3 -
                 REGIONAL LEVEL; AND 4 - CENTRAL OFFICE LEVEL. THE
                 NUMBER CITED INCLUDES YOUR ORIGINAL.

REJECT REASON 4: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 10 DAYS OF THE DATE OF THIS REJECTION NOTICE.

Returning

## MOTION

Plaintiff prays that he will be granted court appointed counsel in this matter.

9-18-04

Respectfully,

Clayton Lilly
Reg. #07188-068

## CERTIFICATE OF SERVICE

I hereby swear or affirm that all information in this suit is true to the best of my knowledge.

Date  9-18-04                                    Respectfully,

                                                 *Clayton Lilly* (signature)
                                                 Clayton Lilly